**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HOMESTEAD INSURANCE COMPANY, : : : | |
| Plaintiff, : : | CIVIL ACTION NO. |
| v. : : | 1:07-CV-2821-JOF |
| WACHOVIA BANK, N.A., : : | |
| Defendant. : | |

### OPINION AND ORDER

This matter is before the court on Defendant's motion for reconsideration [43].

The court briefly summarizes its June 23, 2008 order directing the parties to arbitrate the claims in Plaintiff's complaint. On November 21, 2006, Plaintiff, Homestead Insurance Company, filed suit against Defendant, Wachovia Bank, named as a Defendant in its role as successor to First National Bank of Atlanta. On July 25, 1989, Homestead entered into a Reinsurance Agreement with Interstate Guaranty Insurance Company. The Reinsurance Agreement contained an agreement to arbitrate any disputes arising out of it. Under applicable reinsurance regulations, Interstate was required to place money into a trust for the benefit of Homestead as security for Interstate's obligations under the Reinsurance

Agreement. According to Plaintiff's complaint, the purpose of this trust was to protect Homestead in the event that Interstate became insolvent.

On December 6, 1989, Homestead, Interstate, and Wachovia entered into a Trust Agreement whereby Homestead was designated as the sole beneficiary of the Trust, Interstate was designated as the Grantor of the Trust, and Wachovia Bank was designated as the Custodian/Trustee of the Trust.

Homestead avers that on four occasions starting in 1995, in accordance with the terms of the Trust Agreement, it requested a withdrawal of funds held in Trust, but that Wachovia refused to do so. On July 13, 1995, the Fulton County Superior Court appointed John W. Oxendine, Commissioner of Insurance in the State of Georgia, to be Rehabilitator for Interstate. Homestead claims that it only learned ten years later on August 31, 2005, that Wachovia Bank had closed the trust account in 1996 and distributed the $203,143.43 in the account to MC Consulting, LLC, who was working with the Rehabilitator. Homestead argues that since it was the beneficiary of the Trust, Wachovia acted improperly in sending the monies to Interstate and not Homestead.

Article XX of the Reinsurance Agreement governs arbitration:

As a condition precedent to any right of action hereunder, any dispute or difference of opinion, whether arising before or after termination with reference to the interpretation of this Agreement or to the rights of either party with respect to any transactions under this Agreement, the dispute shall, upon the request of one of the parties, be submitted to arbitration.

AO 72A
(Rev.8/82)

*See* Reinsurance Agreement, Article XX.

For reasons that Wachovia does not challenge in this motion for reconsideration, the court held that the terms of the Trust Agreement incorporated the Reinsurance Agreement and its arbitration provision into the Trust Agreement. *See* Order, dated June 23, 2008, at 9-11.

The court then considered the scope of the arbitration provision and held:

> the Reinsurance Agreement here requires arbitration of "any dispute or difference of opinion" whether before or after termination of the agreement (1) "with reference to the interpretation of this Agreement" or (2) "to the rights of either party with respect to any transactions under this Agreement." The first clause concerning the interpretation of the Agreement does not limit the parties. The second clause concerning transactions under the Agreement does limit the scope to the parties to the Reinsurance Agreement. Homestead alleges that the money held in Trust was for its benefit and should not have been paid out in the Interstate receivership. The court finds that this claim concerns at least the interpretation of the Trust Agreement and therefore falls into the scope of the arbitration clause. For this reason, the court finds that the scope of the arbitration clause in the Reinsurance Agreement covers the litigation raised here.

*Id.* at 12.

In its motion for reconsideration, Wachovia argues that the scope of the first clause which governs disputes concerning the "interpretation of this Agreement" is limited only to the Reinsurance Agreement because the Trust Agreement was not in existence at the time the Reinsurance Agreement was signed. Wachovia contends that the incorporation of the

3

Reinsurance Agreement into the Trust Agreement cannot alter the plain meaning of the term "the Agreement" as defined in the Reinsurance Agreement.

Wachovia further avers that the arbitration provision in the Reinsurance Agreement demonstrates that it could not have been meant to be applied to non-parties such as Wachovia because when it says "either party" or "both parties," it is referring to Homestead and Interstate.

The court finds that both of these points are simply rearguments of the assertion that the arbitration provisions of the Reinsurance Agreement could not be incorporated through the Trust Agreement to be used against Wachovia. It is of no moment that the Trust Agreement incorporating the Reinsurance Agreement was not in existence at the time the Reinsurance Agreement was signed. This is why it was necessary to incorporate the Reinsurance Agreement and its arbitration provisions into the Trust Agreement.

Further, as the court noted in its previous order, Homestead's argument goes to the interpretation of the Trust Agreement, an Agreement that was established to act as security for the Reinsurance Agreement. In fact, the Trust Agreement in Article III discusses various provisions relating to the Reinsurance Agreement, such as the fact that the Trust Agreement was drawn in conjunction with the Reinsurance Agreement. *See* Trust Agreement, Art. III, ¶ 1. The Trust Agreement goes on to discuss the circumstances under which payments under the Trust Agreement would need to be made to fund Interstate's obligation under the

4

Reinsurance Agreement. *Id.*, ¶ 2(b). Another provision requires that a determination be made as to whether Interstate's obligations under the Reinsurance Agreement remain unliquidated and undischarged. *Id.*, ¶ 2(c). Those "obligations" are defined as various items that arise under the Reinsurance Agreement. *Id.*, ¶ 3. Thus, it is likely that any discussion of the duties Defendant had under the Trust Agreement will require reference to and interpretation of the terms of the Reinsurance Agreement, a matter clearly within the scope of the arbitration provision of the Reinsurance Agreement.

For the foregoing reasons, the court DENIES Defendant's motion for reconsideration [43].

**IT IS SO ORDERED** this 10th day of December 2008.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

5